UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

LARRY COX                                                    PLAINTIFF

VS.                                    CIVIL ACTION NO. 3:11CV331TSL-MTP

MISSISSIPPI DIVISION OF MEDICAID                             DEFENDANT

MEMORANDUM OPINION AND ORDER

The case is presently before the court on the motion of defendant Mississippi Division of Medicaid for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Larry Cox has responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion is well taken and should be granted.

Plaintiff Larry Cox, an employee of defendant Mississippi Division of Medicaid (MDM), filed the present action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, asserting a claim of race discrimination based on defendant's failure to promote him. MDM denies it failed to select plaintiff for promotion on account of his race and asserts another candidate was selected because of the candidate's higher cumulative score during the interview process. Defendant seeks summary judgment on plaintiff's claim, contending plaintiff cannot demonstrate pretext

in the face of its legitimate non-discriminatory reason for not promoting him.[1]

MDM has adduced evidence demonstrating the following: In 1992, MDM hired Cox, who is black, as a Systems Analyst II. Since his employment began, Cox has been promoted four times, most recently in 2000 to the position of Lead Programmer Analyst. In 2008, MDM announced the opening of the position of Systems Manager II. Five applicants, two white and three black, applied for the position. To fill the position, a diverse, three-member panel was assembled, consisting of J.J. Dunn, a white male, who served as Chief Systems Information Officer and would-be supervisor of the successful applicant; Medgar Austin, a black male, who served as Deputy Administrator; and Lynda Dutton, a white female, who served as the Division's Deputy Administrator for Administration. MDM explains that typically, the supervisor develops the interview questions, and corresponding sample answers, following which the questions are reviewed by the Human Resources Department to ensure the questions are appropriate in general, as well as appropriate for the specific position. Here, panel members were provided a questionnaire with fourteen interview questions, along with a

---

[1] The complaint also purported to assert a claim for race discrimination pursuant to 28 U.S.C. § 1981 and a state law claim for intentional infliction of emotional distress. Defendant sought summary judgment as to both claims and in his response to the motion, plaintiff has conceded that it is due to be granted as to these claims.

point scale for rating the candidates' responses to the questions. Following the interviews, each panel member, without consultation with fellow panel members, completed a Candidate Scoring Worksheet for each interviewee, provided his or her total score for that candidate and indicated his or her first and second choices to fill the position based on the score. The position of Systems Manager II was awarded to Barry Marshall, a white male with the highest cumulative score of 164, thirteen points higher than Cox's score of 151.

In a case such as this, where the plaintiff has not presented direct summary judgment evidence of discrimination, the court applies the burden-shifting framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).[2] Under this framework, the employee claiming discrimination must first establish a *prima facie* of race discrimination. See Lee v. Kansas City Southern Ry. Co., 574 F.3d 253, 259 (5th Cir. 2009). Defendant does not challenge plaintiff's prima facie showing.

Once an employee has made out a *prima facie* case, an inference of intentional discrimination is raised and the burden of production shifts to the employer, who must offer an alternative non-discriminatory explanation for the adverse employment action. Id. Here, defendant has satisfied this

---

[2] Plaintiff does not contend he has any direct evidence of discrimination.

burden, stating that another candidate was deemed more qualified based on receiving the highest cumulative score by a neutral, three-member selection panel after considering the applications and interviewing the candidates. See Sabzevari v. Reliable Life Ins. Co., 264 Fed. App'x 392, 395 (5th Cir. Jan. 31, 2008) ([h]olding that "[s]election of a more qualified applicant is a legitimate and nondiscriminatory reason for preferring one candidate over another."). If the defendant carries this burden, then the plaintiff must establish that the defendant's reasons are not true but are in fact a pretext for discrimination. See Price v. Fed. Express Corp., 283 F.3d 715, 719-20 (5th Cir. 2002).

Plaintiff denies that MDM has satisfied this burden, contending that in fact, contrary to MDM's urging, the hiring process did not actually mandate that the interviewee with the highest cumulative total be selected. He also contends he was better qualified for the position and that certain of defendant's interview questions were designed to promote a white candidate. Finally, he posits that his non-selection was the product of MDM's continued practice of denying promotion to this position. In the court's view, it appears from his arguments that plaintiff misapprehends MDM's burden. Defendant's burden at the second step of the McDonald Douglas analysis is one of production, not one of persuasion. Defendant is not required to prove its reason(s) by a preponderance of the evidence, but rather to offer a legitimate,

4

nondiscriminatory reason for its decision.  See King v. Univ. Healthcare Sys., L.C., 645 F.3d 713, 724 (5th Cir. 2011).  It is then plaintiff's burden to rebut that reason.  To do so, "'[i]t is not enough ... to disbelieve the employer.'" Warren v. City of Tupelo, Miss., 332 Fed. Appx. 176, 181 (5th Cir. June 3, 2009) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 519, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)).  "Instead, 'the factfinder must believe the plaintiff's explanation of intentional discrimination.'" Id.

In the court's opinion, plaintiff has failed to cast doubt on the defendant's explanation that Marshall was chosen for this reason.  Whereas MDM contends it selected Marshall for the position rather than plaintiff because Marshall had the highest cumulative score, plaintiff contends that in fact, MDM's hiring process did not require that it select the candidate with the highest cumulative score for the position.  However, the evidence does not bear this out. As support for his position, plaintiff first points out there is no mention in the record of the "highest cumulative score" being calculated by the panel.  He next notes that as part of the interview/selection process, each panel member was to tally his/her individual scores for each applicant and to indicate, based on his/her scores, his/her first and second choices for the position.  Plaintiff apparently concludes from this that the process was designed so that the individual who

5

received the highest score from the majority of panel members was to be selected, and not the candidate with the highest cumulative score. It strikes the court there are two shortcomings to plaintiff's position.

First, his belief as to how the process was supposed to work is not supported by the record evidence. While the agency employees who were deposed may not have used the phrase "highest cumulative score" in describing the selection process, they clearly indicated that selection based on the highest cumulative score was the normal procedure. For example, Janie Simpson, head of MDM's Department of Human Resources at the time of the challenged decision, made clear in her testimony that it was defendant's normal procedure to hire the person with the highest score. Moreover, panel member Austin testified he believed that Dunn, in accordance with the normal procedure, averaged all of the scores and selected Marshall because he had the highest score.

Furthermore, even if there were evidentiary support for plaintiff's apparent belief that the applicant who was the first choice of the majority of panel members was to be selected for the promotion, that would not result in a conclusion plaintiff should have received the promotion, since neither candidate was the first choice of the majority of panel members. Austin's scoring resulted in Cox as his first choice, with 53 points, and Marshall his second choice at 49 points; Marshall was Dutton's first

choice, with 62 points, compared to 45 points for Cox; and Dunn scored both Marshall and Cox equally, at 53. Certainly it would have been reasonable for MDM to default to a highest cumulative score as a basis for selection where no candidate was the first choice of the majority of panel members.

Furthermore, even assuming that MDM violated its own procedure in selecting Marshall, Cox has failed to present any evidence that it did so in a racially discriminatory manner. <u>See</u> <u>Warren</u>, 332 Fed. Appx. at 181 (holding that an employer's "disregard of its own hiring system does not prove racial discrimination absent a showing that discrimination was a motive in the action taken").

Cox maintains, alternatively, that but for panel member Dutton's skewed scoring and Dunn's inclusion of an interview question weighted in favor of Marshall, he would have received the highest cumulative score and have been awarded the promotion. MDM denies that the selection process was impermissibly tainted. Cox argues that Dutton's scores for Marshall were too generous because they were out of line with the scores awarded by Dunn and Austin. Cox attributes Dutton's generosity to racial bias, yet he has provided nothing, save his own subjective belief, to indicate that Dutton rated Marshall higher (or plaintiff lower) because of his race. This is patently insufficient. <u>See</u> <u>Auguster v. Vermilion Parish Sch. Bd.</u>, 249 F.3d 400, 402-03 (5th Cir. 2001) (holding

7

that a plaintiff must offer substantial evidence of pretext amounting to more than her subjective belief of discrimination). On the other hand, MDM has presented Dutton's deposition testimony in which she explains that she did not score Cox as high as Marshall because she believed that in the interview, Cox, in contrast to Marshall, gave short answers and failed to elaborate on all criteria called for by the questions.

Plaintiff next takes a swipe at the neutrality of one of the interview questions, authorship of which he attributes to Dunn. Specifically, he maintains that question 2, "Describe any formal project management training or certification that you have?", was designed so that only an applicant with a Project Management Professional (PMP) certification could get full points. He submits that the significance of the PMP certification was overrated, as evidenced by the fact that two of the panel members, Austin and Dutton, were not familiar with the PMP certification. And he posits that since the only applicant with PMP certification was the sole white applicant, then the question was racially biased. He concludes that if this biased question had been eliminated, he would have been the proper person to hire for the position. Plaintiff's attempt to minimize the importance of the PMP certification is unavailing. While Dutton was unsure about what the letters "PMP" stood for, she was clear that it was national certification for IT professionals, comparable to a CPA

designation for accountants.  Plaintiff has not demonstrated that defendant's preference that an applicant have PMP certification is illegitimate, nor has he presented any competent proof to show that a discriminatory animus was behind the inclusion of question 2.  He has offered only his subjective belief, that Dunn (with the approval of Human Resources) included this question with the intent to discriminate against him on the basis of his race.  Again, this is insufficient.  It bears noting, too, that even if the allegedly biased question were eliminated, Marshall still outscored plaintiff by four points.

Ultimately, MDM maintains Marshall was selected because, objectively, he was the better qualified candidate: Marshall had a bachelor of science degree in information technology (IT) in contrast to Cox's associate arts degree in data processing; Marshall had the PMP certification, which Cox did not possess; and Marshall had 10 years' recent experience in each of the areas required for the position, as opposed to Cox's 24 years of experience in only the application development side of IT.  A plaintiff can establish pretext with proof that "he was 'clearly better qualified' than the employee selected for the position at issue." Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 356-57 (5th Cir. 2001), abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002) (citations omitted).  But "differences in

9

qualifications are generally not probative evidence of discrimination unless those disparities are of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." Dulin v. Bd. of Comm'rs, No. 10-60095, 2011 WL 2654738, at *6 (5th Cir. July 8, 2011) (internal quotations omitted). It is not enough that the applicants are "similarly qualified"; rather the plaintiff must present evidence showing that he "was clearly better qualified." Sabzevari, 264 Fed. App'x at 395 (citation omitted). At best, the evidence shows that Cox and Marshall were similarly qualified. Finally, in his effort to create a fact issue as to pretext, plaintiff complains that defendant has a long-standing practice of denying him the promotion to Systems Manager II. Cox testified that the position has been vacant numerous times since 2000, and in the first three instances, the position was not open to the public and a white individual was simply appointed, while the fourth time, plaintiff applied but was denied an interview for the ostensible, but incorrect reason that an associate of arts degree did not qualify him for the position. Plaintiff offers no further information regarding either the circumstances surrounding the appointment of the white individuals to the position or his exclusion from the interview process in the fourth instance. Without more, the court cannot conclude that there is sufficient

10

evidence to create a genuine issue of fact on whether MDM's reason for denying him the promotion in 2008 is pretextual.  Accordingly, as plaintiff has failed to create a genuine issue of material fact on the issue of pretext, defendant's motion for summary judgment will be granted.

Based on the foregoing, it is ordered that defendant's motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 11th day of May, 2012.

                        /s/Tom S. Lee_____
                        UNITED STATES DISTRICT JUDGE